OPINION
Defendant-appellant, Richard Cornelius, appeals his conviction following a jury trial in the Middletown Municipal Court for two counts of assault. We affirm the decision of the trial court.
Tanya Heard was driving appellant, her cousin, in his vehicle on September 25, 2000. Tanya claims she was driving the vehicle at appellant's direction so appellant could arrange drug deals from the car. Tanya stated she was paid in crack cocaine for driving appellant.
Later that evening, Tanya used appellant's vehicle without his knowledge. Appellant phoned the police to report the vehicle stolen. When Tanya returned the vehicle the night of September 25, 2000, a fight ensued and Tanya was injured. Tanya claims appellant grabbed her, punched her, knocked her down to the ground, and kicked her in the stomach. Tanya was seven months pregnant at the time.
After the fight, Tanya walked to her father's house. Her father's house was "a five minute walk" from where she returned the vehicle to appellant. During the walk, Tanya noticed she was bleeding vaginally. Her father's house did not have a phone so Tanya walked to her mother's house. Her mother's house was "a ten minute walk" from her father's house. At her mother's house, the paramedics were called. The paramedics arrived and transported Tanya to Middletown Hospital. From Middletown Hospital, she was taken by Care Flight to Miami Valley Hospital. Tanya prematurely gave birth to a son soon after her arrival at Miami Valley Hospital.
Appellant was charged with two counts of assault: one count for an assault upon Tanya and one count for an assault upon the unborn child carried by Tanya. Appellant appeals the conviction raising five assignments of error.
Assignment of Error No. 1:
 THE FINDING OF GUILT IN THE CASE SUB JUDICE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
An appellate court will not reverse a judgment as against the manifest weight of the evidence in a jury trial unless it unanimously disagrees with the fact-finder's resolution of any conflicting testimony. Statev. Thompkins (1997), 78 Ohio St.3d 380, 389. The standard for reversal of a verdict that is against the manifest weight of the evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Id. at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of the witnesses and the weight to be given to the evidence. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
The evidence before the jury included Tanya's testimony. Tanya testified that appellant "started hitting me and punching me and kicking me" when she got out of the car. Tanya testified that the punching and kicking caused her to fall down and the kicking continued after she fell to the ground. Paramedic Steve Soellner testified that upon his arrival Tanya was complaining of vaginal bleeding. Paramedic Scott Bruggeman testified that when he asked Tanya what happened to cause the bleeding, she replied, a "hit in the stomach."
Vanessa McGee, who was present when Tanya returned the vehicle, testified for the defense and stated that she never saw appellant hit Tanya. Vanessa testified that appellant "reached for the [car] keys" and then Tanya went "down to the ground." When asked if appellant could have kicked Tanya when she was on the ground, Vanessa replied, "I wasn't watching his feet." Kathy Allen, who was also present, testified that she did not see appellant hit Tanya, but saw him "grab for his keys." Then Kathy testified the next thing she saw was "Vanessa in the middle of" appellant and Tanya, "to make sure that didn't anything [sic] happen."
Considering this evidence, mindful that the jury was in the best position to judge the credibility of the witnesses and the weight to be given to the evidence, we cannot find that the jury clearly lost its way by finding appellant guilty of assault. Therefore, the first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED BY PERMITTING HEARSAY TESTIMONY TO BE ADMITTED AT TRIAL.
Appellant argues the testimony of Jeremiah Wallace [sic] and Patrolman Ezerski [sic] which was permitted into evidence, contained hearsay evidence that was prejudicial to him and, therefore, the convictions should be reversed.[1] The testimony that appellant attributes to Jeremiah Wallace was actually the testimony of Reverend Otto Wallace, Tanya's fiancé. The identification of a witness as Patrolman Ezerski is also erroneous. The testimony attributed to Patrolman Ezerski was actually that of Detective Fred Shumake.The record in the present case reveals no objections made by appellant's counsel on the ground of hearsay, or any other grounds, to the responses of Detective Shumake and Otto Wallace that appellant argues are prejudicial. Where a response contains hearsay and there is no objection to that response, the evidence may be considered. State v. Nichols (1976), 48 Ohio App.2d 330, 331. Moreover, an appellate court will not consider any error which the complaining party did not bring, but could have brought, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. Lefort v. Century 21-Maitland Realty Co. (1987), 32 Ohio St.3d 121, 123. Therefore, the second assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED BY PERMITTING A PROSECUTION WITNESS, TONYA HEARD, TO REMAIN IN THE COURT ROOM [SIC] AT TRIAL WHILE OTHER WITNESSES TESTIFIED AFTER A MOTION FOR SEPARATION OF WITNESSES WAS REQUESTED.
Evid.R. 615 requires the court to order the separation of witnesses upon a motion to do so. Under Evid.R. 615(C), such an order cannot exclude from the courtroom "a person whose presence is shown by a party to be essential to the presentation of the party's cause."
The prosecution asked for the separation of witnesses and asked that Tanya be permitted to remain in the courtroom to assist the prosecution. The trial court granted the separation of witnesses and stated, Tanya "will be permitted to remain in the courtroom to assist the prosecutor in the case." Appellant made no objection to Tanya remaining at the prosecutor's table in the trial court. We find no error in this ruling by the trial court. See City of Cleveland v. Wirtz (July 29, 1993), Cuyahoga App. No. 62751, unreported. Therefore, the third assignment of error is overruled.
Assignment of Error No. 4:
 THE TRIAL COURT COMMITTED SO MANY [SIC] CUMULATIVE ERRORS WARRANTING A REVERSAL OF DEFENDANT-APPELLANT'S CONVICTION.
Appellant appears to argue that he was deprived of his right to a fair trial because the trial court committed "so many cumulative errors."
Although a particular error might not constitute prejudicial error in and of itself, a conviction may be reversed if the cumulative effect of the errors deprive a defendant of a fair trial, despite the fact that each error individually does not constitute cause for reversal. Statev. Fears (1999), 86 Ohio St.3d 329, 348, certiorari denied (2000),529 U.S. 1039, 120 S.Ct. 1535. The doctrine of cumulative error is not applicable where an appellant fails to establish multiple instances of harmless error during the course of the trial. State v. Garner (1995),74 Ohio St.3d 49, 64, certiorari denied (1996), 517 U.S. 1147,116 S.Ct. 1444. Since appellant fails to indicate, by the record, any error, the doctrine of cumulative error is not applicable and appellant's fourth assignment of error is overruled.
Assignment of Error No. 5:
 THE TRIAL COURT ERRED BY IMPOSING FINES AND COSTS IN THE CASE SUB JUDICE.
In his final assignment of error, appellant claims that, when imposing a $250 fine and ordering him to pay court costs on each count, the trial court failed to consider his inability to pay. Appellant maintains that his inability to pay the fines and costs is demonstrated by the municipal court judge's finding that he was indigent for purposes of receiving appointed counsel.
R.C. 2947.23 governs costs of prosecution and jury fees and provides, in part, that "[i]n all criminal cases * * *, the judge or magistrate shall include in the sentence the costs of prosecution and render a judgment against the defendant for such costs." Unlike the statutory provisions governing fines and court-appointed attorney fees, R.C. 2947.23
does not require a trial court to consider a defendant's ability to pay costs of prosecution. Based upon the plain language of R.C. 2947.23, we find that the trial court properly ordered appellant to pay the costs of prosecution.
R.C. 2929.22 governs the imposition of fines for a misdemeanor and provides in section (F) that the court shall not impose a fine that exceeds the amount that the offender is or will be able to pay without undue hardship. A determination that a criminal defendant is indigent for purposes of receiving appointed counsel does not prohibit the trial court from imposing a financial sanction. State v. Kelly (2001),145 Ohio App.3d 277, 283. The ability to pay a fine over a period of time is not equivalent to the ability to pay legal counsel a retainer fee at the onset of criminal proceedings. State v. Johnson (1995),107 Ohio App.3d 723, 728, appeal not allowed (1996), 75 Ohio St.3d 1484. Accordingly, the fact that appellant has had appointed counsel for the duration of this case does not require this court to conclude that the trial court's imposition of fines is contrary to law.
Imposition of fines will not be reversed absent an abuse of discretion. See State v. Stevens (1992), 78 Ohio App.3d 847, 851. A trial court abuses its discretion when it fails to consider whether a defendant will be able to pay an imposed fine without undue hardship as required by R.C. 2929.22(F). State v. Polick (1995), 101 Ohio App.3d 428,432. An abuse of discretion is more than an error of law or judgment and implies that the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 157.
The trial court did not specifically question appellant about his ability to pay the $250 fines without undue hardship. However, R.C.2929.22(F) does not require a trial court to conduct a hearing regarding a defendant's ability to pay a fine, but rather merely requires a trial court to consider appellant's ability to pay the fine without undue hardship. See Polick, 101 Ohio App.3d at 432. The record in this case is not devoid of evidence to suggest that the trial court considered the factors set forth in R.C. 2929.22(F). At the December 11, 2000 arraignment hearing, the trial court asked appellant, "are you employed anywhere presently," do you "have any cash or money in the bank," and "do you own any other property or assets * * *." All of the answers appear on the record as "inaudible." The presumption of regularity compels the conclusion the trial court properly considered and applied the statute in the face of this record. This court determined that "in the face of a silent record," we cannot say that an imposed fine "constitutes an abuse of discretion where no time limit was imposed by the court for payment of the fine." State v. Cole (1982), 8 Ohio App.3d 416, 418. Consequently, the trial court did not act unreasonably, arbitrarily, or unconscionably in fining appellant since it is apparent that some inquiry was made regarding a defendant's ability to pay the fines and no time limit was placed upon payment of the fines. Therefore, the fifth assignment of error is overruled.
Judgment affirmed.
YOUNG and VALEN, JJ., concur.
[1] We note at the outset that Jeremiah Wallace did not testify in court since he is the son born to Tanya and was only three months old at the time.