[Cite as *State v. Morris*, 2016-Ohio-7614.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
### No. 104013

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## WILLIAM MORRIS

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED IN PART; REVERSED IN PART;
## VACATED IN PART; REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-13-577354, CR-14-588516 and CR-15-597117

**BEFORE:** E.A. Gallagher, P.J., McCormack, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** November 3, 2016

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
BY: Cullen Sweeney
Assistant Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY: Zachary M. Humphrey
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN A. GALLAGHER, P.J.:

**{¶1}** Defendant-appellant William Morris appeals the consecutive sentences imposed after (1) he pled guilty, in separate cases, to charges of failure to verify address and escape arising out of his failure to comply with his reporting obligations as a registered sex offender and while on postrelease control and (2) was found to have violated community control sanctions in a third case. For the reasons that follow, we affirm the trial court's imposition of consecutive sentences on the failure to verify address and escape convictions. However, as to the community control violation, we vacate the sentence imposed by the trial court and remand the matter for resentencing.

**Factual and Procedural Background**

**{¶2}** On December 11, 2013, Morris pled guilty to failure to verify his address in violation of R.C. 2950.06(F) (Case No. CR-13-577354). The trial court imposed a sentence of two years of community control sanctions. At sentencing, the trial court indicated that if Morris violated his community control sanctions he would be subject to a sentence of 24 months in prison and three years of discretionary postrelease control.

**{¶3}** On August 28, 2014, Morris was again charged with failure to verify his address in violation of R.C. 2950.06(F) (Case No. CR-14-588516).[1] On July 15, 2015, Morris was charged with escape for failing to comply with his reporting obligations for

---

[1]The failure to verify address that gave rise to Morris' conviction in Case No. CR-13-577354 occurred in June 2013. The failure to verify address that gave rise to Morris' conviction in Case No. CR-14-588516 occurred in June 2014.

postrelease control arising out of a 2010 conviction for attempted failure to verify his address (Case No. CR-15-597117). In December 2015, Morris pled guilty to the failure to verify address charge in Case No. CR-14-588516 and the escape charge in Case No. CR-15-597117. The trial court sentenced Morris to 12 months in prison on each of the offenses. Based on these convictions, the trial court found that Morris had violated the terms of his community control in Case No. CR-13-577354 and sentenced him to 24 months in prison. The trial court ordered that all three sentences be served consecutively, imposing an aggregate prison sentence of four years, along with postrelease control for up to three years.

{¶4} Morris appealed his sentences, raising the following two assignments of error for review:

ASSIGNMENT OF ERROR NO. I:
The trial court erred in denying William Morris his right to allocute at his sentencing hearing on his community control violation hearing in Case No. 588516.

ASSIGNMENT OF ERROR NO. II:
The trial court imposed a sentence contrary to law and violated Mr. Morris' right to due process when it ordered consecutive sentences without making the requisite statutory findings supported by the record.

**Law and Analysis**

**Right to Allocute at Sentencing Hearing on Community Control Violation**

{¶5} In his first assignment of error, Morris argues that the trial court erred in denying him a right to allocute prior to imposing the sentence for his violation of community control sanctions.

{¶6} Crim.R. 32(A)(1) provides, in relevant part:

At the time of imposing sentence, the court shall * * * [a]fford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment.

{¶7} Crim.R. 32(A) confers upon a defendant "an absolute right of allocution." *State v. Green*, 90 Ohio St.3d 352, 358, 738 N.E.2d 1208 (2000). It also imposes an affirmative obligation on the trial court to "ask" a defendant "if he or she wishes to" exercise that right. *State v. Keith*, 8th Dist. Cuyahoga Nos. 102981, 103006, and 103009, 2016-Ohio-3056, ¶ 31. The right cannot be waived before the trial court has asked the defendant if he or she wishes to speak in allocution. *State v. Campbell*, 90 Ohio St.3d 320, 324-325, 738 N.E.2d 1178 (2000); *Keith* at ¶ 30.

{¶8} "The purpose of allocution is to allow the defendant an opportunity to state for the record any mitigating information which the judge may take into consideration when determining the sentence to be imposed." *State v. Turjonis*, 7th Dist. Mahoning No. 11 MA 28, 2012-Ohio-4215, ¶ 6. The right of allocution belongs to the defendant himself or herself. *State v. Matthews*, 1st Dist. Hamilton No. C-140663, 2015-Ohio-5075, ¶ 12, citing *State v. Thompson*, 1st Dist. Hamilton No. C-120516, 2013-Ohio-1981, ¶ 5. "It is not enough for the trial court to give defense counsel the opportunity to speak on the defendant's behalf." *Matthews* at ¶ 12, citing *Green,* 90 Ohio St.3d at 359-360; *see also State v. Crawley*, 1st Dist. Hamilton Nos. C-150403 and C-150422, 2016-Ohio-658, ¶ 10 ("[T]he notion counsel's argument may substitute for the

defendant's allocution has been rejected: 'The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself.'"), quoting *Green v. United States*, 365 U.S. 301, 304, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961). "Trial courts must painstakingly adhere to Crim.R. 32, guaranteeing the right of allocution. A Crim.R. 32 inquiry is much more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse." *Green*, 90 Ohio St.3d at 359-360.

{¶9} At issue in this case is whether a defendant who was afforded the right of allocution at his or her original sentencing hearing also has a right of allocution at the sentencing hearing for his or her violation of community control when the trial court imposes the prison term that it stated at the original sentencing hearing it would impose if the defendant violated community control.

{¶10} It is undisputed that the trial court did not give Morris an opportunity to exercise his right to allocution at the community control violation hearing. At the community control violation hearing, the trial court gave both the state and defense counsel an opportunity to address the court prior to sentencing Morris — neither of whom offered anything beyond what they had said with respect to sentencing on the failure to verify address and escape offenses in Case Nos. CR-14-588516 and CR-15-597117. However, the trial court denied Morris an opportunity to make a statement on his own behalf or to himself present any information in mitigation of punishment, stating that Morris had no right to allocution prior to sentencing for a community control violation:

THE COURT: All right. With regard to probation violation or community control the defendant does not have a right to allocution. He's already been sentenced on that. I'm not going to give you defendant [a] right to allocution on that because he doesn't have it according to the courts of appeals.

The trial court then proceeded to impose the sentence for Morris' community control violation that it had informed Morris, at the original sentencing hearing, it could impose if he violated community control — i.e., 24 months in prison — and imposed that sentence consecutively to the sentences imposed for the failure to verify address and escape offenses in Case Nos. CR-14-588516 and CR-15-597117.

{¶11} As the parties point out, there is a split among the districts on this issue. Morris urges us to follow the First District and find that a defendant has a right to allocution when he or she is being sentenced for a community control violation. *See, e.g., State v. Jackson*, 1st Dist. Hamilton No. C-140384, 2015-Ohio-2171, ¶ 8; *see also State v. Osume,* 1st Dist. Hamilton No. C-140390, 2015-Ohio-3850, ¶ 18-25; *State v. McAfee*, 1st Dist. Hamilton No. C-130567, 2014-Ohio-1639, ¶ 14. The state urges us to follow this court's prior decision in *State v. Henderson*, 8th Dist. Cuyahoga No. 42765, 1981 Ohio App. LEXIS 10890, *12 (June 18, 1981) — in which we rejected the defendant's argument that he had a right to allocution prior to sentencing at his probation revocation hearing — and decisions from the Third, Seventh and Eleventh Districts that have held a defendant has no right to allocution prior to sentencing at a probation

revocation or community control violation hearing. *See, e.g., State v. Michael,* 3d Dist. Henry No. 7-13-05, 2014-Ohio-754, ¶ 29-32; *State v. Favors*, 7th Dist. Mahoning No. 08-MA-35, 2008-Ohio-6361, ¶ 13, 15-19; *Turjonis*, 2012-Ohio-4215, at ¶ 13; *State v. Payne*, 11th Dist. Ashtabula No. 2015-A-0007, 2015-Ohio-5073, ¶ 29-34; *see also State v. Krouskoupf*, 5th Dist. Muskingum No. CT2005-0024, 2006-Ohio-783, ¶ 15.

**{¶12}** Since these cases were decided, the Ohio Supreme Court issued its decision in *State v. Heinz*, 146 Ohio St.3d 374, 2016-Ohio-2814, 56 N.E.3d 965. In *Heinz*, the Ohio Supreme Court held that the county prosecuting attorney has a right to notice of, and the opportunity to represent the state at, community control violation proceedings. *Id.* at ¶ 2, 19, 21, 23. In reaching this conclusion, the court distinguished community control violation hearings from probation violation and revocation hearings, noting, among other differences, that following a community control violation hearing, the trial court conducts a "second sentencing hearing" to which Crim.R. 32(A)(2) applies:

> Effective July 1, 1996, the General Assembly enacted Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136 to revise Ohio's felony sentencing statutes, and among other changes, "community control replaced probation *as a possible sentence* under Ohio's felony sentencing law." (Emphasis added.) *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 16. Unlike probation, which is a period of time served during suspension of a sentence, community control sanctions are imposed as the punishment for an offense at a sentencing hearing. R.C. 2929.01(E); R.C. 2929.01(FF). * * *
>
> The revocation of community control is an exercise of the sentencing court's criminal jurisdiction, and pursuant to R.C. 2929.15(B)(1), the court may extend the term of the offender's community control or impose a more restrictive sanction or a prison term if the conditions of community control are violated. As we explained in *State v. Fraley*, 105 Ohio St.3d 13, 2004-Ohio-7110, 821 N.E.2d 995, ¶ 17, "[f]ollowing a community control

violation, the trial court conducts a second sentencing hearing. At this second hearing, the court sentences the offender anew and must comply with the relevant sentencing statutes." And at a sentencing hearing, "[t]he state has the right to be present * * *." *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, ¶ 44, fn. 2 (Lanzinger, J., dissenting).

Thus, in contrast to probation violation and revocation proceedings as described by the court in *Gagnon*, community control violation hearings are formal, adversarial proceedings. Moreover, at community control violation hearings, the Rules of Criminal Procedure afford an offender the right to counsel, Crim.R. 32.3(B), and pursuant to R.C. 2930.09, a victim in the case has the right to be present. * * *

Furthermore, R.C. 2929.19(A) and Crim.R. 32(A)(2) direct the trial court at the time of imposing sentence to afford the prosecuting attorney the right to appear and speak on behalf of the state, because it has an interest in ensuring that a proper sentence is imposed to punish and rehabilitate the offender while protecting the public, R.C. 2929.11(A). These same statutes apply when the court decides the appropriate sentence for a community control violation. *Fraley* at ¶ 17. * * *

*Heinz* at ¶ 14-16, 19.

{¶13} Crim.R. 32(A)(2) provides that "[a]t the time of imposing sentence, the court shall * * * [a]fford the prosecuting attorney an opportunity to speak." Because, under *Heinz*, Crim.R. 32(A)(2) "appl[ies] when the court decides the appropriate sentence for a community control violation," *Heinz* at ¶ 19, Crim.R. 32(A)(1), which requires the trial court, "[a]t the time of imposing sentence," to "address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment," must also apply when sentencing a defendant for a community control violation. Accordingly, the trial court erred in denying Morris a right of allocution at the sentencing hearing on his community control violation.

**{¶14}** The state argues that even if Morris had a right of allocution at the community control violation hearing, he was not denied that right because the trial court gave Morris an opportunity to personally address the trial court at the sentencing hearing on the failure to verify address and escape offenses, which immediately preceded the community control violation hearing, and the trial court indicated it would "incorporate" the "arguments" made at that sentencing hearing into the community control violation hearing. At the sentencing hearing in Case Nos. CR-14-588516 and CR-15-597117, the trial court stated:

> THE COURT: At this point it's my intention to go directly to sentencing on these matters. I will also follow up with a community control violation hearing on the 577354 case. I'll incorporate all of your arguments from sentencing into the PV as well.

**{¶15}** After the state and defense counsel made their respective arguments to the trial court regarding appropriate sentencing on the failure to verify address and escape offenses, the trial court gave Morris an opportunity to address the court:

> THE COURT: Mr. Morris, anything you like to add before I impose sentence?
>
> THE DEFENDANT: No sir.

**{¶16}** We do not agree that this exchange satisfied the trial court's obligation under Crim.R. 32(A)(1) to "address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment" at the time of imposing sentence on Morris' community control violation. Although the trial court indicated that it would incorporate all of the parties' *arguments*

made during sentencing on the failure to verify and escape offenses in Case Nos. CR-14-588516 and CR-15-597117 into the community control violation hearing, it did not indicate that any *statements* made by Morris at sentencing on the failure to verify address and escape charges would be considered in sentencing him on his community control violation. To the contrary, the trial court expressly stated that it was "not going to give [Morris] a right to allocution on that," mistakenly believing that Morris did not have a right to allocution at the sentencing hearing on his community control violation.

{¶17} Where, as here, "the trial court has imposed sentence without first asking the defendant whether he or she wishes to exercise the right of allocution created by Crim.R. 32(A), resentencing is required unless the error is invited error or harmless error." *Campbell*, 90 Ohio St.3d 320, 738 N.E.2d 1178, at paragraph three of the syllabus; *see also State v. King*, 8th Dist. Cuyahoga No. 95972, 2011-Ohio-3985, ¶ 8 (defendant was entitled to remand for further resentencing where transcript from resentencing hearing demonstrated that, while the trial court allowed defense counsel to speak, it failed to personally address the defendant and afford her the opportunity to make a statement or offer information in mitigation of punishment and there were "no factors warranting a finding of invited or harmless error").

{¶18} "Invited error" is more than "mere acquiescence" in the trial court's failure to comply with Crim.R. 32(A)(1). *Campbell* at 324. An error is "invited" only if the defendant or defense counsel "'induced'" or was "'actively responsible'" for the trial court's error. *Id.,* quoting *State v. Kollar*, 93 Ohio St. 89, 91, 112 N.E. 196 (1915).

There is nothing in the record that warrants a finding of invited error. We must, therefore, consider whether the trial court's failure to ask Morris if he wished to make a statement in his own behalf or present any information in mitigation of punishment prior to sentencing him on the community control violation was harmless error.

{¶19} "[A] trial court's failure to address the defendant at sentencing is not prejudicial in every case." *Campbell* at 325; *see also* Crim.R. 52(A) ("[a]ny error, defect, irregularity, or variance which does not affect substantial rights" is harmless error and "shall be disregarded"). "The question of what constitutes harmless error in the context of the right to allocution, however, is open to some question." *State v. Thompson*, 1st Dist. Hamilton No. 2013-Ohio-1981, ¶ 9; c*ompare State v. Reynolds*, 80 Ohio St.3d 670, 684, 687 N.E.2d 1358 (1998) (trial court's failure to afford defendant a right of allocution before sentencing him to the death penalty was harmless error because defendant had made an unsworn statement during the penalty phase, had sent a letter to the trial court and defense counsel made a statement on his behalf); *State v. Woods*, 8th Dist. Cuyahoga No. 96487, 2011-Ohio-5825, ¶ 25 (trial court's failure to provide defendant an opportunity for allocution at his resentencing to impose postrelease control was harmless error where defendant was provided an opportunity for allocution at the original sentencing hearing, the same trial judge who originally sentenced defendant conducted the resentencing, the defendant's sentence remained unchanged and "[t]he outcome was inevitable" because the trial court was statutorily required to impose five years of postrelease control); *State v. Reed*, 10th Dist. Franklin No. 09AP-1164,

2010-Ohio-5819, ¶ 19 (trial court's failure to provide defendant with right to allocution was harmless where defendant had been sentenced to the minimum prison term allowed and trial court imposed no fines and waived costs) *with In re S.D.*, 8th Dist. Cuyahoga No. 99763, 2014-Ohio-2528, ¶ 34-35 (denial of defendant's right to allocute was not harmless error where trial court considered defendant's lack of remorse and "used [it] against him" during disposition given that "[t]hose words of contrition the court was looking for normally come, if at all, at the sentencing or dispositional hearing after the defendant is given the opportunity to make a statement"); *Jackson*, 2015-Ohio-2171, at ¶ 13-15 (denial of right to allocute was not harmless error where, when defendant attempted to speak, trial court told him to be quiet two times, trial court did not afford defendant's counsel an opportunity to speak on his behalf before imposing sentence and "[g]iven that the trial court imposed the maximum prison term," it could not be said that "had the trial court afforded [defendant] and his attorney the opportunity to present evidence in mitigation, it would have had no positive effect upon his sentence"); *State v. McComb*, 2d Dist. Montgomery Nos. 23604, 23605, 23606, 23607 and 23608, 2010-Ohio-4043, ¶ 9 (trial court's error in failing to address defendant personally and inquire whether he wished to speak on his own behalf prior to imposing sentence was not harmless because defendant "did not have an alternative opportunity to address the court on the issue of mitigation prior to the imposition of sentence").

{¶20} Morris asserts that, if he had been permitted to allocute at the community control violation hearing, he would have "remind[ed]" the trial court of the "mitigating

circumstances" from "two years earlier" that led the trial court to impose community control sanctions at the original sentencing hearing. He indicates that "while [he] may not have had mitigation with respect to his second two cases [Case Nos. CR-14-588516 and CR-15-597117], he clearly did have mitigation with respect to his first case," noting that at Morris' original sentencing hearing in Case No. CR-13-577354, "the trial court was receptive to Morris' explanation that his difficulty verifying was attributable, in part, to his homelessness and his being a victim of assault at the homeless shelter."

{¶21} Where, as here, the trial court explicitly stated that it would "not * * * give [Morris] a right to allocution" and Morris did not otherwise have an opportunity, prior to sentencing, to personally address the trial court and offer mitigation information with respect to his community control violation, we cannot state that the trial court's failure to ask the defendant whether he wished to make a statement in his own behalf or present any information in mitigation of punishment prior to sentencing him on the community control violation was harmless error.

{¶22} This is not a case in which the defendant received the minimum sentence for his offense. Morris received the maximum sentence the trial court could impose for his community control violation. We cannot know what, if anything, Morris might have said if he had been given an opportunity to speak prior to sentencing on his community control violation or how, if at all, any mitigation information he might have provided could have impacted the sentence he ultimately received. As such, the trial court's error in denying Morris a right to allocute was not harmless. We sustain Morris' first

assignment of error. We reverse the trial court's judgment in part, vacate the sentence imposed on Morris' community control violation in Case No. CR-13-577354 only and remand the matter to the trial court with instructions to resentence Morris on his community control violation after providing him an opportunity to allocute in accordance with Crim.R. 32(A)(1).

**Imposition of Consecutive Sentences**

{¶23} In his second assignment of error, Morris contends that his consecutive sentences should be vacated because the trial court failed to make the requisite findings for the imposition of consecutive sentences under R.C. 2929.14(C)(4) and that, even if the trial court made such findings, the findings were not supported by the record. Based on our disposition of Morris' first assignment of error, we address his second assignment of error only to the extent it alleges the trial court erred in imposing consecutive sentences on the failure to verify address and escape offenses in Case Nos. CR-14-588516 and CR-15-597117. [2]

{¶24} We review felony sentences under the standard set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1, 21-22. Under R.C. 2953.08(G)(2), an appellate court may vacate the imposition of consecutive sentences where it "clearly and convincingly" finds that (1)

---

[2] As to Morris' claim that the trial court erred in ordering that the sentence on his community control violation in Case No. CR-13-577354 be served consecutively to the sentences imposed on the failure to verify address and escape offenses in Case Nos. CR-14-588516 and CR-15-597117, his assignment of error is moot.

the record does not support the trial court's findings under R.C. 2929.14(C)(4) or (2) the sentence is "otherwise contrary to law." R.C. 2953.08(G)(2). If a trial court fails to make the findings required under R.C. 2929.14(C)(4), the imposition of consecutive sentences is contrary to law. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37; *State v. Primm*, 8th Dist. Cuyahoga No. 103548, 2016-Ohio-5237, ¶ 66, citing *State v. Balbi*, 8th Dist. Cuyahoga No. 102321, 2015-Ohio-4075, ¶ 4.

**{¶25}** In Ohio, there is a presumption that prison sentences should be served concurrently, unless the trial court makes the findings outlined in R.C. 2929.14(C)(4) to warrant consecutive service of the prison terms. *Primm* at ¶ 64, citing *State v. Cox*, 8th Dist. Cuyahoga No. 102629, 2016-Ohio-20, ¶ 3, and R.C. 2929.41(A). Pursuant to R.C. 2929.14(C)(4), in order to impose consecutive sentences, the trial court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender, that such sentences are not disproportionate to the seriousness of the conduct and to the danger the offender poses to the public and that at least one of the following also applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶26}** The trial court must both make the statutory findings required for consecutive sentences at the sentencing hearing and incorporate those findings into its sentencing entry. *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at syllabus. To make the requisite "findings" under the statute, "'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *Id.* at ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999). A trial court need not give a "talismanic incantation of the words of the statute" when imposing consecutive sentences, "provided that the necessary findings can be found in the record and are incorporated in the sentencing entry." *Bonnell* at ¶ 37; *see also State v. Thomas*, 8th Dist. Cuyahoga No. 102976, 2016-Ohio-1221, ¶ 16 ("the trial court's failure to employ the exact wording of the statute does not mean that the appropriate analysis is not otherwise reflected in the transcript or that the necessary finding has not been satisfied").

**{¶27}** In this case, when imposing consecutive sentences, the trial court stated:

The law does favor concurrent terms. However, a judge is given discretion in certain circumstances if necessary to protect and punish, if the offense is — if the offense, sentence is not disproportionate to impose consecutive sentences. As I said, this defendant was found guilty of violent [crimes], rape and kidnapping, he has utterly failed the responsibilities to the people of the State of Ohio to report his whereabouts and make his whereabouts known. I believe he's a danger to the public doing that. I believe consecutive sentences in this matter are necessary to protect and punish, are not disproportionate. The present crimes were committed while defendant was on post-release control from the original

rape case in this matter and also while the defendant was on probation to this court for the identical offense. And also the defendant's criminal history shows that consecutive terms are necessary in this matter for [the] reasons I already stated to protect the public. Therefore, case numbers 597117, 577534 and 588516 will be run consecutive to one another for an overall aggregate sentence of four years.

**{¶28}** In addition, the trial court's December 17, 2015 sentencing journal entry included the following findings:

The court imposes prison terms consecutively finding that consecutive service is necessary to protect the public from future crime or to punish defendant; that the consecutive sentences are not disproportionate to the seriousness of defendant's conduct and to the danger defendant poses to the public; and that, the defendant committed one or more of the multiple offenses while the defendant was awaiting trial or sentencing or was under a community control or was under post-release control for a prior offense, or defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by defendant.

**{¶29}** Morris concedes that the trial court made some of the findings required for the imposition of consecutive sentences, including that consecutive sentences are necessary to protect the public from future crime or to punish the offender and one or more of the findings required under R.C. 2929.14(C)(4)(a)-(c). He does not dispute that all of the requisite findings were included in the trial court's sentencing entry. However, Morris contends that the trial court failed to make the proportionality findings required

under R.C. 2929.14(C)(4) at the sentencing hearing. He argues that the trial court failed to find that (1) consecutive sentences would not be disproportionate to the seriousness of Morris' conduct and (2) consecutive sentences would not be disproportionate to the danger Morris poses to the public. He contends that the trial court's determination that consecutive sentences "are not disproportionate" without "specify[ing] what, if anything, its proportionality finding was related to" did not satisfy its statutory obligation to find that consecutive sentences are not disproportionate both to the "seriousness of the conduct" and the "danger the offender poses to the public" prior to imposing consecutive sentences. We disagree.

{¶30} This court has repeatedly rejected similar arguments. In *State v. Crawley*, 8th Dist. Cuyahoga No. 102781, 2015-Ohio-5150, for example, this court stated:

> In the case at hand, appellant contends that the trial court failed to make the requisite findings, under R.C. 2929.14(C)(4), that consecutive sentences are not disproportionate to the seriousness of his conduct and to the danger he poses to the public. * * *
>
> Appellant disputes the trial court's lack of specificity, arguing that the court merely stated that the sentences were "not disproportionate," without specifying the basis on which that determination was made. Therefore, appellant argues, the trial court failed to make sufficient findings required by R.C. 2929.14(C)(4).

This court has repeatedly held that although the trial court must make the findings required by R.C. 2929.14(C)(4), the court has no obligation to state the reasons to support its findings. Having made sufficient findings for the imposition of consecutive sentences, the trial court fulfilled the R.C. 2929.14(C)(4) requirements. Thus, the trial court's failure to identify the

factors — or "the reasons" — that were considered in its proportionality analysis does not render the consecutive sentences contrary to law.

*Crawley* at ¶ 10, 12-13.  Similarly, in *State v. Cooperwood*, 8th Dist. Cuyahoga Nos. 99309-99311, 2013-Ohio-3432, this court stated:

> Cooperwood complains that the trial court, instead of stating that consecutive sentences "would not be disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," stated only that consecutive sentences "would not be disproportionate." Viewing the court's statement in its context, we are satisfied that the trial court made a distinct "proportionality" finding in compliance with the statute.

*Cooperwood* at ¶ 40.

**{¶31}** Likewise, in *State v. Amey*, 8th Dist. Cuyahoga Nos. 103000 and 103001, 2016-Ohio-1121, this court held that, when the trial court's remarks were "[v]iew[ed] * * * in their entirety," the trial court's statement that consecutive sentences "would not be disproportionate" was sufficient to constitute a statutory finding that consecutive sentences "would not be disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public" in compliance with R.C. 2929.14(C)(4) as follows:

> Amey complains that the court stated only that consecutive sentences "would not be disproportionate," and therefore did not make the statutory finding that consecutive sentences "would not be disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public."  * * *
>
> [I]n this matter, the trial court's statements on the record clearly indicate that it considered proportionality with regard to the seriousness of Amey's conduct and the danger presented.  The court remarked that Amey was on probation for a domestic violence conviction * * *.  The court noted that he

had been referred to domestic violence classes but did not attend them. The court also outlined Amey's extensive record that included crimes of violence and offenses committed while Amey was on community control sanctions. The court remarked that he had not "responded favorably to sanctions previously imposed." Viewing the court's remarks in their entirety, we are satisfied that the trial court made a distinct "proportionality" finding in compliance with the statute.

*Amey* at ¶ 15-16.

{¶32} In *State v. Kirkman*, 8th Dist. Cuyahoga No. 103683, 2016-Ohio-5326, this court held that a finding that consecutive service of a defendant's sentences would not be disproportionate to the seriousness of his conduct could be discerned from the court's statement that "I don't believe it's disproportionate." *Kirkman* at ¶ 5. The court indicated that "[w]hile we prefer that the sentencing judge make separate and distinct findings under R.C. 2929.14(C)(4)," in *Bonnell*, the Ohio Supreme Court took "a more 'relaxed' approach to those findings, finding that the requisite findings could be made if the reviewing court could 'discern' them from statements made by the sentencing judge."

*Id.* at ¶ 4*; see also State v. McCoy*, 8th Dist. Cuyahoga No. 103671, 2016-Ohio-5240, ¶ 13-14 (trial court made findings required under R.C. 2929.14(C)(4) that consecutive sentences were not disproportionate to the seriousness of defendant's conduct and the danger he posed to the public where trial judge said "based upon the defendant's actions, three separate cases where firearms were utilized or brandished, individuals being robbed * * * at shopping centers, I don't believe that any punishment would be disproportionate, and I believe it's necessary to protect and punish"); *State v. Chaney,* 2d Dist. Montgomery No. 2015-CA-116, 2016-Ohio-5437, ¶ 11 ("'[T]he trial court's failure to

employ the phrase "not disproportionate to the * * * danger [appellant] poses to the public" does not mean that the trial court failed to engage in the appropriate analysis and failed to make the required finding.'"), quoting *State v. Hargrove*, 10th Dist. Franklin No. 15AP-102, 2015-Ohio-3125, ¶ 21.

{¶33} *State v. Elmore*, 7th Dist. Jefferson No. 14 JE 0021, 2016-Ohio-890, upon which Morris relies, is distinguishable. In that case, the trial court never used the term consecutive sentence and never used the terms proportionate or disproportionate or otherwise applied the concept when imposing consecutive sentences. *Id.* at ¶ 54, 58-60. As the Seventh District noted: "Inherent in the proportionality finding is that a trial court engage in a weighing process, comparing or balancing these two factors, which it stands in the best position to do." *Id.* at ¶ 58. In this case, the record demonstrates that the trial court carefully weighed the seriousness of Morris' conduct and the danger he poses to the public against the consecutive service of his sentences.

{¶34} On the record before us, we find that the trial court satisfied its statutory obligations to make the requisite findings for imposing consecutive sentences under R.C. 2929.14(C)(4) and to incorporate those findings into the sentencing entry. The trial court's statements on the record indicate that it considered proportionality both with regard to the seriousness of Morris' conduct and the danger he poses to the public. The trial court expressly found that consecutive service of Morris's sentences was "necessary * * * to protect the public" and that "consecutive sentences in this matter are necessary to protect and punish, are not disproportionate." The trial court further remarked that

Morris "was found guilty of violent sentences, rape and kidnapping," that he "has utterly failed the responsibilities to the people of the State of Ohio to report his whereabouts and make his whereabouts known" and that he's "a danger to the public doing that." The trial court also noted that the offenses were committed while Morris was on postrelease control and while he was on "probation" for an "identical offense" for failure to verify his address. Viewing the trial court's remarks in their entirety, we can discern from the trial court's statement — "I believe consecutive sentences in this matter are necessary to protect and punish, are not disproportionate" — findings that consecutive sentences are both not disproportionate to the seriousness of Morris' conduct and not disproportionate to the danger Morris poses to the public.

{¶35} Morris next argues that the record does not support the trial court's proportionality findings. He contends that because the reporting violations giving rise to his convictions did not involve "any harm to persons or property" and "are not new substantive crimes at all" but rather, are only "technical in nature," the record does not support the trial court's findings that consecutive sentences are disproportionate to the seriousness of his conduct and to the danger he poses to the public. Once again, we disagree.

{¶36} Where, as here, the trial court has made the findings required to impose consecutive sentences, we cannot vacate those sentences unless we "clearly and convincingly find[]" that "the record does not support the sentencing court's findings." R.C. 2953.08(G)(2); *see also Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d

1231 at ¶ 22 ("R.C. 2953.08(G)(2)(a) compels appellate courts to modify or vacate sentences if they find by clear and convincing evidence that the record does not support any relevant findings under [R.C. 2929.14(C)(4)]"), citing *State v. Belew*, 140 Ohio St.3d 221, 2014-Ohio-2964, 17 N.E.3d 515, ¶ 12 (Lanzinger, J., dissenting from the decision to dismiss the appeal as having been improvidently accepted).

{¶37} As this court explained in *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453 (8th Dist.), "[t]his is an extremely deferential standard of review":

> It is also important to understand that the clear and convincing standard used by R.C. 2953.08(G)(2) is written in the negative. It does not say that the trial judge must have clear and convincing evidence to support its findings. Instead, it is the court of appeals that must clearly and convincingly find that the record does not support the court's findings. In other words, the restriction is on the appellate court, not the trial judge.

*Id.* at ¶ 21.

{¶38} "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Marcum* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶39} We do not "clearly and convincingly" find that the record does not support the trial court's findings. The record reflects that Morris has a fairly extensive criminal history dating back to 1993 that includes several OVIs, a domestic violence conviction, probation violations, rape, kidnapping and burglary convictions and multiple similar

reporting violations, as to which prior, lesser sanctions had not discouraged Morris from engaging in the same conduct. The trial court concluded that consecutive prison sentences were the only way to impress on Morris the importance of complying with his reporting obligations and to keep the public safe from his criminal conduct.

{¶40} Accordingly, there is no basis for vacating the trial court's imposition of consecutive sentences on the failure to verify address conviction in Case No. CR-14-588516 and the escape conviction in Case No. CR-15-597117 under R.C. 2929.14(C)(4) or R.C. 2953.08(G)(2). Morris' second assignment of error is overruled in part and moot in part.

{¶41} Judgment affirmed in part; reversed in part; vacated in part; remanded.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

TIM McCORMACK, J., and
EILEEN T. GALLAGHER, J., CONCUR